# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* E. D. LARKIN, Minor.

UNPUBLISHED
July 17, 2018

No. 341960
Wayne Circuit Court
Family Division
LC No. 16-522863-NA

Before: FORT HOOD, P.J., and SERVITTO and BECKERING, JJ.

PER CURIAM.

Respondent-mother appeals as of right the trial court's order terminating her parental rights to the minor child, EDL,[1] under MCL 712A.19b(3)(c)(*ii*) (failure to rectify other conditions); (g) (failure to provide proper care or custody); (i) (parental rights to sibling terminated due to serious and chronic neglect or abuse); and (j) (reasonable likelihood of harm if returned to the parent).[2] We affirm.

In May 2016, Children's Protective Services (CPS) received a referral alleging the physical abuse of EDL. The ensuing investigation revealed that EDL was born exposed to drugs, testing positive for cocaine and methadone, which required him to be placed on morphine to control his withdrawal symptoms. In June 2016, the Department of Health and Human Services (DHHS) filed a petition requesting removal and termination of respondent's parental rights based on the results of the CPS investigation. The petition also outlined the threatened harm of having the child in respondent's care, summarized her prior history with CPS in three separate cases in which allegations were substantiated, listed a history of unsuccessful services, outlined the prior termination of respondent's rights to five other children, and listed her criminal history.

---

[1] The trial court terminated the parental rights of both respondent-mother and EDL's father, but the father's parental rights are not at issue in this appeal.

[2] In addition to these statutory grounds, respondent-mother states in her appellate brief that the court also took jurisdiction and terminated her parental rights pursuant to MCL 712A.19b(3)(c)(*i*) and 3(h). However, the court made clear the statutory grounds applicable to each parent's termination, and we address only the bases applicable to respondent-mother.

-1-

The child was initially placed with his father, under the conditions that he and respondent did not reside together and that her visits were supervised by DHHS or a designee. Respondent entered a plea in which she admitted the allegations concerning her prior termination cases, but she reserved her right to a trial on the issue of whether termination was in the child's best interests. Ultimately, the court declined to terminate respondent's parental rights at that time because the minor child was with his father, he was bonded to respondent, and the child's lawyer-guardian ad litem (L-GAL) advocated against terminating respondent's rights.

Respondent's treatment plan was to include substance abuse and parenting skills services. Respondent was also required to obtain a legal source of income and suitable housing. DHHS's plan included having the father file for custody with the Friend of the Court so that custody could be addressed and the termination case could be closed. Respondent had completed parenting classes; however, her main issue continued to be substance abuse, and although respondent had earned some unsupervised visits with EDL, supervision was renewed when she tested positive for drug use.

In April 2017, DHHS filed a supplemental petition indicating that EDL's father had been arrested, jailed, and charged with first-degree murder, and was unable to provide care for the child. A safety plan was put in place with EDL's paternal grandparents. The petition also alleged that while respondent did complete parenting classes, she did not adequately benefit from them because she continued her drug use, missed required drug screens, and revoked her consent for DHHS to receive information from the clinic providing services. Respondent also did not have suitable housing or income. Furthermore, due to respondent's volatile behavior, the grandparents had requested that her visits be moved to the agency and that visits be less frequent. DHHS again requested termination of respondent's parental rights. The trial court ultimately terminated respondent's parental rights, noting that respondent had a history of terminations and substance abuse and that EDL had been born positive for cocaine.

Respondent now argues that the trial court erred in finding clear and convincing evidence sufficient to establish statutory grounds for termination. We disagree.

"In order to terminate parental rights, the trial court must find by clear and convincing evidence that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been met." *In re VanDalen*, 293 Mich App 120, 139; 809 NW2d 412 (2011). The trial court's findings that a ground for termination has been established and regarding the child's best interests are reviewed for clear error. MCR 3.977(K); *In re Rood*, 483 Mich 73, 90-91; 763 NW2d 587 (2009) (opinion by CORRIGAN, J.). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re BZ*, 264 Mich App 286, 296-297; 690 NW2d 505 (2004). "Appellate courts are obliged to defer to a trial court's factual findings at termination proceedings if those findings do not constitute clear error." *Rood*, 483 Mich at 90 (opinion by CORRIGAN, J.). If this Court concludes that the trial court did not clearly err in finding one statutory ground for termination, this Court does not need to address the additional grounds. *In re HRC*, 286 Mich App 444, 461; 781 NW2d 105 (2009).

Termination of parental rights is proper under MCL 712A.19b(3)(c)(*ii*) where

[o]ther conditions exist that cause the child to come within the court's jurisdiction, the parent has received recommendations to rectify those conditions, the conditions have not been rectified by the parent after the parent has received notice and a hearing and has been given a reasonable opportunity to rectify the conditions, and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

In this case, EDL came within the trial court's jurisdiction after respondent's plea, in which she acknowledged that EDL was born testing positive for cocaine and that she had a history of prior terminations of her parental rights with respect to her other children. In September 2016, respondent received recommendations for substance-abuse treatment and parenting skills classes. Respondent was also required to obtain a legal source of income and suitable housing. Respondent was "given a reasonable opportunity to rectify" these conditions because termination did not take place until nearly 18 months after removal and one year after services were recommended. MCL 712A.19b(3)(c)(*ii*).

Respondent began having positive drug tests in December 2016. She subsequently revoked her consent for DHHS to receive information about her substance-abuse treatment and testing. In August 2017, the trial court ordered respondent to participate in anger-management courses, but she refused those services. She was also noncompliant with random drug screens beginning in August 2017. Given respondent's failure to participate in services and drug screens, there was no reasonable likelihood that she would rectify these issues within a reasonable time.

Moreover, respondent's failure to obtain employment and suitable housing further supported termination under MCL 712A.19b(3)(c)(*ii*). Respondent did not provide DHHS with proof of legal income or suitable housing. While she claimed at trial that she had obtained income and housing, she could provide no evidence of either. A review of the record reflects that DHHS had received and unsuccessfully attempted to verify three different addresses for respondent. When respondent did report a source of income, in the form of a handwritten letter stating that she was providing care for an elderly man, the man denied that she had ever provided care for him. Based on the evidence before the court, there was no reasonable likelihood that she would rectify these issues within a reasonable time. For these reasons, the trial court did not clearly err by finding that termination of respondent's parental rights was warranted under MCL 712A.19b(3)(c)(*ii*).[3]

Next, respondent argues that the trial court clearly erred by finding that termination of her parental rights was in EDL's best interests. "Once a statutory ground for termination has been proven, the trial court must find that termination is in the child's best interests before it can terminate parental rights." *In re Olive/Metts*, 297 Mich App 35, 40; 823 NW2d 144 (2012). When considering best interests, the focus is on the child, not the parent. *In re Moss*, 301 Mich

---

[3] Because termination was appropriately granted under MCL 712A.19b(3)(c)(*ii*), we need not address the additional grounds. *HRC*, 286 Mich App at 461.

App 76, 87; 836 NW2d 182 (2013). "[W]hether termination of parental rights is in the best interests of the child must be proved by a preponderance of the evidence." *Id*. at 90.

Respondent argues that the trial court's finding regarding the child's best interests was erroneous because of the strong bond between respondent and the child. "The trial court should weigh all the evidence available to determine the child's best interests." *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014). The trial court may consider such factors as "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home . . . ." *Olive/Metts*, 297 Mich App at 41-42 (citations omitted). Other factors that the trial court can consider include a "parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the child's well-being while in care, and the possibility of adoption." *White*, 303 Mich App at 714. The trial court may consider the parent's substance-abuse problems. See *In re AH*, 245 Mich App 77, 89; 627 NW3d 33 (2001) (observing that the trial court correctly concluded that termination of parental rights was in the best interest of the child after considering, among other factors, the respondent's substance abuse problems). The trial court may also consider how long the child lived with relatives, and the likelihood that "the child could be returned to [the] parent['s] home within the foreseeable future, if at all." *In re Frey*, 297 Mich App 242, 248-249; 824 NW2d 569 (2012).

In this case, the trial court heard testimony from the foster care specialist assigned to the case that a strong bond existed between respondent and EDL. However, the strength of the bond between the child and the parent is only one factor for the court to consider. See *White*, 303 Mich App at 713. The trial court also heard from the L-GAL that EDL needed permanency and stability and needed to have his needs met every day. Serious harm was already done to EDL when he was born testing positive for cocaine and suffered from withdrawal symptoms. As previously noted, respondent was unable to show compliance with her case plan. She was noncompliant in her substance-abuse treatment and testing, she refused to attend anger-management classes, and she failed to maintain a legal income and appropriate housing. This evidence weighs negatively against respondent's ability to parent and supports EDL's need for permanency and appropriate care. Further, given respondent's failure to comply with the agency's plan and court orders, it was highly unlikely that EDL could be returned to respondent's care "within the foreseeable future, if at all." *Frey*, 297 Mich App at 249. Moreover, the record supports the conclusion that EDL was doing well with his grandparents. They ensured that he was involved in various activities. EDL had been placed with them since March 2017, and they had been involved in his care since birth. They were ready, willing, and able to adopt EDL. Therefore, the trial court did not err by finding that termination was in EDL's best interests because it would allow him to be adopted by his grandparents and obtain permanency and stability.

Next, respondent argues that because EDL was placed with relatives, the trial court had no reason to terminate her parental rights and should have instead considered lesser alternatives. We acknowledge that the Michigan Supreme Court has stated that "a child's placement with relatives weighs against termination . . . ." *In re Mason*, 486 Mich 142, 164; 782 NW2d 747 (2010). Therefore, "the fact that a child is living with relatives when the case proceeds to termination is a factor to be considered in determining whether termination is in the child's best interests." *Olive/Metts Minors*, 297 Mich App at 43. Indeed, "[a] trial court's failure to explicitly

address whether termination is appropriate in light of the children's placement with relatives render[s] the factual record inadequate to make a best-interest determination and requires reversal." *Id*. However, in this case, when making its findings, the trial court expressly noted that EDL was placed with his grandparents, who had been competently caring for him since March 2017. Further, respondent had admitted that there was a falling out between herself and EDL's grandparents, and EDL's grandmother testified that respondent was volatile and that their relationship had changed after EDL's father was arrested. Additionally, EDL's grandmother indicated a willingness to adopt EDL if both parents' rights were terminated. Given the relationship and conflict that developed between respondent and EDL's grandparents, as well as respondent's failure to comply with the case service plan and to take anger-management courses, a less restrictive option was not feasible. Therefore, notwithstanding EDL's placement with a relative, the trial court did not clearly err when it found that termination of respondent's parental rights was in EDL's best interests.

Respondent also argues that she has been successful at staying substance-free in the past. The record does not support this argument. Respondent self-reported a 10-year period of remaining substance-free. However, the record indicates that she had a history of relapses and that substance abuse was an issue in her prior terminations. She tested positive for fentanyl and cocaine during the pendency of this case. Notably, respondent's clinical evaluation concluded that she was unable to remain substance-free and that she minimized the impact of her substance-abuse problem. As a whole, the record supports the conclusion that termination of respondent's parental rights was in EDL's best interests in light of the damage already done at birth, respondent's continued struggles with substance abuse even after four terminations, and her unstable housing and employment situations.

Finally, respondent argues that she should be given additional time to comply with the case service plan in order to achieve reunification with her child. Respondent cites no support for this proposition; moreover, she has shown that she does not benefit from services. In her brief on appeal, respondent also blames foster care specialist Ramona Miles for respondent's lack of progress in complying with her case service plan or her substance abuse treatment. According to respondent, reversal of the trial court's order is warranted where Miles did not refer respondent for additional services where respondent was not benefitting from services. However, respondent does not specify what additional services should have been provided. As previously discussed, respondent has not shown an ability to comply with case service plans or substance-abuse screens. Further, respondent has repeatedly failed to comply with services even after her rights to her other children were terminated, and her behavior has demonstrated a pattern of relapses, evidencing that EDL would remain at risk if returned to respondent. The record further reflects that respondent was uncooperative with DHHS staff, to the point of revoking her consent for DHHS to obtain information about her substance-abuse treatment and testing and refusing to participate in recommended anger-management classes. Respondent also declined Miles's recommendation to have a parent-partner assist her. Under such circumstances, respondent's cursory argument that she ought to have been referred for additional unspecified services is unavailing.

Affirmed.

/s/ Karen M. Fort Hood
/s/ Deborah A. Servitto
/s/ Jane M. Beckering